UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2004 MAY 11 A 11: 55
U.S. DISTRICT COURT
BRIDGEPORT, CONN

| | | |
|---|---|---|
| DENNIS HENDERSON | : | PRISONER<br>CIVIL NO. 3:03CV543 (DJS)(TPS) |
| v. | : | |
| CONNECTICUT STATE D.O.C., ET AL. | : | MAY 10, 2004 |

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

This is a civil rights action filed on March 27, 2003, in which the plaintiff, an inmate named Dennis Henderson, who is currently incarcerated at the Osborn Correctional Institution, is seeking money damages and injunctive relief for what he alleges to be deliberate indifference to a serious medical need. The plaintiff requested an egg crate mattress for his lower back pain. That request was denied by Dr. Timothy Silvis. The denial was relayed to the plaintiff by the Health Services Administrator for the MacDougall-Walker Correctional Institution ("MWCI"), Mr. Richard Furey. The defendants in this action include the Connecticut Department of Correction ("DOC"), Dr. Silvis, Mr. Furey and the former warden at MWCI, Brian Murphy. The plaintiff seeks an award of money damages and an order requiring the defendants to give him an egg crate mattress.

On December 16, 2002, the plaintiff filed a habeas corpus petition in the Superior Court for the Judicial District of Hartford seeking an order requiring the medical staff at MWCI to give him an egg crate mattress. (Rule 56(a)1 Statement, paras. 19-20; Exhibit A to Blanchette Affidavit). At the completion of a hearing on the habeas petition held on April 16, 2003, the Court dismissed the plaintiff's habeas petition and refused to order the DOC to provide the

plaintiff with an egg crate mattress. (Rule 56(a)1 Statement, paras. 28-29, Exhibit B and C to Blanchette Affidavit).

The facts which are pertinent to this lawsuit are as set forth in the affidavits, exhibits, and Local Rule 56(a)1 Statement filed simultaneously herewith. These documents explain the reasoning and appropriateness of the decision denying the plaintiff's request for an egg crate mattress. They also contain a complete transcript of the hearing that was held on the plaintiff's habeas petition.

## II.    SUMMARY JUDGMENT

Summary judgment, "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. § 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). See also, Quarles v. General Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986). The party opposing a motion for summary judgment "may not rest upon the mere allegation or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. § 56(e).

In discussing the history and propriety of summary judgment motions, the Supreme Court noted:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed. Rule Civ. Proc. 1 ... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to

2

> a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

To successfully oppose a motion for summary judgment, the plaintiff must present "significant probative evidence to create a genuine issue of material fact." Soto v. Meachum, Civ. No. B-90-270(WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991). "[T]he mere verification by affidavit of one's own conclusory allegations is not sufficient to oppose a motion for summary judgment." Greene v Georgia Pardons & Parole Bd., 807 F. Supp. 748, 751 n.5 (N.D. Ga. 1992) (citing Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984)). An Affidavit in which the plaintiff merely restates the conclusory allegations of the complaint and denies the truth of the affidavits filed by the defendants is insufficient to create an issue of fact that would make summary judgment inappropriate. Donnelly v. Guion, 467 F.2d 290, 293 (2d Cir. 1972). As one court has stated, to permit such an affidavit to form the basis of denying the defendants' motion for summary judgment "would amount to permitting the plaintiff to keep [his] case in court merely by swearing that [he] has a case." Zenith Vinyl Fabrics Corp. v. Ford Motor Co., 357 F. Supp. 133, 139 (E.D. Mich. 1973). The record in this case, even when considered in a light most favorable to the plaintiff, fully supports the granting of summary judgment in favor of the defendants.

### III. ARGUMENT

#### A. The Plaintiff's Claims Are Barred By The Doctrine Of Collateral Estoppel.

It is well established that an inmate who has fully litigated an issue in a state court habeas corpus action is precluded under the doctrine of collateral estoppel from relitigating that same issue in a subsequent § 1983 lawsuit. See, e.g., Hanton v. Tamburo, et al., No. 3:96CV2644 (DJS)(TPS), Ruling on Motion for Summary Judgment (July 24, 2001, Squatrito, J.); Anderson

v. Kindness, et al., No. 3:95CV1280 (PCD)(JGM), Ruling on Motion for Summary Judgment (May 13, 1997, Dorsey, C.J.); Talton v. Blanchette, No. H-87-66 (PCD), Ruling on Motion for Summary Judgment (June 25, 1992, Dorsey, J.), attached hereto as Attachments 1, 2 and 3. Although none of the defendants in this action were parties to the state court habeas proceedings, they may invoke the doctrine of collateral estoppel against the plaintiff who was a party to that action with respect to any issue that was fully and fairly litigated in the state habeas proceeding. See, Blonder Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 329 (1971); Aetna Casualty and Surety Co. v. Jones, 220 Conn. 285, 302, 596 A.2d 414, 424 (1991).

In the present case, the issue raised by the plaintiff in the state court habeas action is identical to the issue which he raises in the § 1983 lawsuit. In both cases, the sole issue is his dissatisfaction with the decision of the MWCI medical staff to deny his request for an egg crate mattress which he wanted because of lower back pain. Indeed, the plaintiff notes at the bottom of page 4 of his Complaint in this case that he has filed a habeas action in state court and is awaiting a decision in that case.

As is clear from the transcript of the habeas proceeding, the plaintiff was permitted to fully litigate his claim that the MWCI medical staff had wrongfully denied his request for an egg crate mattress. In order to rule on the plaintiff's habeas petition, the state court was required to determine whether the egg crate mattress was a medically necessity such that the denial amounted to deliberate indifference. After hearing all of the evidence, Judge Rittenband accepted the testimony of Dr. Blanchette and told the plaintiff that the medical professionals had recommended against the egg crate mattress. He subsequently dismissed the habeas petition. See exhibits B and C to the Blanchette Affidavit.

4

The plaintiff's attempt to relitigate in his action the same issue which was dismissed in the state habeas action is barred by collateral estoppel.

### B. The Claims For Money Damages And Injunctive Relief Against The Connecticut Department of Correction Are Barred By The Eleventh Amendment To The United States Constitution.

In Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 101, 104 S.Ct. 900, 908 (1984), the Supreme Court summarized the scope of Eleventh Amendment immunity in suits against a state as follows:

> It is clear, of course, that in the absence of consent a suit in which the State or one of it agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. ... This jurisdictional bar applies regardless of the nature of the relief sought.

(Citations omitted).

In the present case, the Eleventh Amendment serves as a bar to the plaintiff's claims for money damages and injunctive relief against the Connecticut DOC.

### C. To The Extent That The Plaintiff Seeks Money Damages Against The Individual Defendants In Their Official Capacity, Such Claims Are Barred By The Eleventh Amendment To The United States Constitution.

Eleventh Amendment immunity extends to suits for money damages against state officials in their official capacity since they represent only another way of pleading an action against the state. Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358, 361 (1991); Kentucky v. Graham, 473 U.S. 159, 105 S.Ct. 3099, 3105 (1985).

The defendants in this case have been served in their official and individual capacities. By way of relief, the plaintiff seeks money damages. Therefore, to the extent that this suit seeks money damages from the defendants in their official capacity, it is barred by the Eleventh Amendment to the United States Constitution.

D.   **Defendant Brian Murphy Had No Personal Involvement In Any Decision Regarding The Plaintiff's Request For An Egg Crate Mattress.**

Personal involvement in an alleged constitutional deprivation is a prerequisite to an award of damages under 42 U.S.C. § 1983. Merriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989); Williams v. Smith, 781 F.2d 319 (2d Cir. 1986); Ayers vs. Coughlin, 780 F.2d 205 (2d Cir. 1985); McKinnon v. Patterson, 568 F.2d 930 (2d Cir. 1977); cert. denied, 434 U.S. 1087 (1978). The doctrine of respondeat superior is not applicable to § 1983 cases. Monell v. New York City Dep't of Social Services, 436 U.S. 658, 692-95 (1978).

A supervisory official who has not directly participated in the conduct complained of may be found personally involved in the deprivation of an inmate's right in other ways. For example, he may have failed to remedy the wrong after the violation was brought to his attention through a report or appeal; created, or permitted to continue, the policy or custom pursuant to which the alleged violation occurred; or been grossly negligent in managing officials under his supervision who caused the unlawful incident. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (citing, Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

In the present case, the only allegation pertaining to Brian Murphy is that he was the Warden at MWCI at the time that the plaintiff was incarcerated at that facility. There are no claims that Warden Murphy knew the plaintiff or was in any way involved in any decisions relating to his request for an egg crate mattress.

It is clear that Warden Murphy has been included as a defendant in this action solely because he held a supervisory position at MWCI. Even if he had been aware of the plaintiff's request for an egg crate mattress, he would have been justified in relying upon the opinion of Dr. Silvis regarding the absence of any medical necessity for an egg crate mattress. Prison administrators who lack medical expertise, "must necessarily place their confidence in the

6

reports of prison doctors whenever an inmate disputes a medical opinion as to what treatment is necessary and proper." McEachern v. Civiletti, 502 F.Supp. 532, 534 (N.D. Ill. 1980).

The plaintiff has not alleged any facts sufficient to support a claim of supervisory liability against defendant Brian Murphy.

### E. The Defendants Were Not Deliberately Indifferent To The Plaintiff's Medical Needs.

To establish an unconstitutional denial of medical care, an inmate must prove "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 291 (1976). Mere negligence will not support a Section 1983 claim. The conduct complained of must "shock the conscience" or constitute a "barbarous act." McCloud v. Delaney, 677 F. Supp. 203, 232 (S.D.N.Y. 1988 ) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970). A treating physician will be liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind." Tomarkin v. Ward, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982) (quoting Estelle, 429 U.S. at 105-06).

Inmates do not have a constitutional right to the treatment of their choice. See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). Thus, mere disagreement with prison officials about what constitutes appropriate medical care does not state a claim cognizable under the Eighth Amendment. Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

There are both subjective and objective components to the deliberate indifference standard. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The alleged deprivation must be "sufficiently serious" in objective terms. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The term "serious medical need" contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway, supra, 37 F.3d at 66 (quoting Nance v. Kelley, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)). See, e.g., Hathaway v. Coughlin, 841 F.2d

7

48 (2d Cir. 1998) (broken pins in hip); Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974) (discarding inmate's ear rather than reattaching it); Martinez v. Mancusi, 443 F.2d 921, 923 (2d Cir. 1970) (refusal to follow surgeon's instructions), cert. denied, 401 U.S. 983 (1971). Not all medical conditions, however, are considered "serious." See, e.g., Jones v. Lewis, 874 F.2d 1125 (6th Cir. 1989) (mild concussion and broken jaw); Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988) (kidney stones); Malsh v. Austin, 901 F. Supp. 757 (S.D.N.Y. 1995) (delay in providing routine dental treatment); May v. Baldwin, 895 F. Supp. 1398 (D.Or. 1995) (dry skin); Glasper v. Wilson, 559 F. Supp. 12 (W.D.N.Y. 1982) (bowel problems).

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, an inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." Chance, supra, 143 F.3d at 702. "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

While it certainly could be debated as to whether a mild degenerative disc disease that afflicts many people of the plaintiff's age is a serious medical condition, there is no evidence to support a finding of deliberate indifference even if we were to assume that the plaintiff's degenerative disc disease did constitute a serious medical condition.

Complaints of lower back pain are among the most common types of complaints seen in prison and in the private sector. (Rule 56(a)1 Statement, para. 8). The x-rays of the plaintiff's spine showed the old laminectomy as well as some mild degenerative arthrosis in the distal

lumbar spine. (Rule 56(a)1 Statement, para. 12; Exhibit D to Silvis Affidavit). Degenerative disc disease is quite common for anyone in the plaintiff's age bracket. (Rule 56(a)1 Statement, para. 13). When Dr. Silvis saw the plaintiff on June 27, 2002 in response to his complaints regarding lower back pain, Dr. Silvis ordered a lower bunk pass, x-rays of the spine, Motrin and no sports activity. (Rule 56(a)1 Statement, para. 11; Exhibit C. to Silvis Affidavit).

Egg crate mattresses are used primarily to try to increase capillary flow in bed ridden patients by relieving pressure to avoid the formation of ulcers on the skin. They are not designed or used for complaints of lower back pain. For lower back pain complaints, you would typically want a firmer mattress that can offer firm support. The prison mattresses provide such support. (Rule 56(a)1 Statement, para. 16). Dr. Blanchette agreed with the decision to deny the plaintiff's request for an egg crate mattress and testified to that effect in the state habeas proceeding. (Rule 56(a)1 Statement, paras. 19-23). Dr. Blanchette cannot recall ever having ordered an egg crate mattress in response to a complaint of lower back pain. (Rule 56(a)1 Statement, para. 24). In the opinion of Dr. Silvis and Dr. Blanchette, there is no indication that an egg crate mattress is medically necessary or medically appropriate for the plaintiff. (Rule 56(a)1 Statement, para. 30).

The plaintiff's complaint of lower back pain was evaluated and treated by MWCI medical staff. While the plaintiff may not agree with their decision regarding his request for an egg crate mattress, the denial was based on sound medical judgment and a belief that such a mattress was not appropriate for someone with lower back pain. Any claim of deliberate indifference with respect to the decision regarding the request for an egg crate mattress is unfounded and unsupported by the evidence.

9

**F.     The Plaintiff's Claim For Injunctive Relief Against The Individual Defendants Is Moot.**

"The hallmark of a moot case or controversy is that the relief sought can on longer be given or is no longer needed." Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983). "It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility." Prins v. Coughlin, III, 76 F.3d 504, 506 (2d Cir. 1996).

The three individual defendants in this case are the Warden at MWCI, the physician at MWCI and the Health Services Administrator at MWCI. The plaintiff transferred from MWCI to the Osborn Correctional Institution on June 13, 2003 and has remained at Osborn Correctional Institution since that time. (Rule 56(a)1 Statement, para. 9; Exhibit A to Silvis Affidavit). Since none of the individual defendants are involved with the provision of medical care at the Osborn Correctional Institution, injunctive relief relating to the plaintiff's request for an egg crate mattress can no longer be ordered as to these defendants.

**G.     In The Event That The Court Does Not Grant Summary Judgment On The Grounds Previously Raised, The Defendants Should Nevertheless Be Entitled To Qualified Immunity.**

The doctrine of qualified immunity shields state officials from liability for damages if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). The Second Circuit has described the circumstances where qualified immunity would apply as follows:

> a government official sued in his individual capacity ... is entitled to qualified immunity in any of three circumstances: (1) if the conduct attributed to him is not prohibited by federal law ...; or (2) where the conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct ...; or (3) if the defendant's action was 'objective[ly] legal[ly] reasonable[ ] ... in light of the

> legal rules that were clearly established at the time it was taken.' These three issues should be approached in sequence, for if the second is resolved favorably to the official, the third becomes moot; a favorable resolution of the first moots both the second and the third.

X-Men Security, Inc. v. Pataki, 196 F.3d 56, 65-66 (2d Circ. 1999) (citations omitted).

A right is clearly established if a reasonable person in the defendant's position should know that his or her actions violate that right. The unlawfulness must be apparent. McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir. 1999) (citation omitted). In other words, a state official should not be forced to have to defend his actions against civil rights challenges unless the state of the law at the time of the alleged conduct gave him "fair warning" that his actions were unlawful. Hope v. Pelzer, 122 U.S. 1508, 1516 (2002).

In the present case, the defendants are not aware of any court ruling that would suggest that the denial of an egg crate mattress to an inmate complaining of lower back pain due to mild degenerative disc disease was anything other than appropriate and within the accepted standard of care. It is respectfully submitted that no reasonable person in the position of the defendants would consider their actions a violation of the plaintiff's constitutional rights.

## IV.  CONCLUSION

For all of the foregoing reasons, the defendants' Motion for Summary Judgment should be granted.

DEFENDANTS
Connecticut State D.O.C., et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: *[signature]*
Richard T. Couture
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105
Federal Bar #ct05480
E-Mail: richard.couture@po.state.ct.us
Tel.: (860) 808-5450
Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that a copy of the foregoing Memorandum in Support of Motion for Summary Judgment with attachments was sent by first class mail, postage prepaid, this 10th day of May, 2004, to:

Dennis Henderson, No. 154736
Osborn Correctional Institution
P.O. Box 100
Somers, CT 06071

*[signature]*
Richard T. Couture
Assistant Attorney General

12