# EXHIBIT A

CMD

CN1050
REV 4/80

822046

CONNECTICUT DEPARTMENT OF CORRECTION

1 of 5

(Notice - file this petition in the county in which you are confined, but Somers inmates must file in Hartford. File the original and two copies with the court clerk.)

Inmate No. 154736

**Dennis Henderson**
(NAME OF INMATE)

VS. WARDEN
LOCATION   Brian K.Murphy
Ellis MacDougal / Walker CI
Suffield, Connecticut

FOR SUBMISSION TO SUPERIOR COURT AT
Habeas Filing Clerk
101 Lafayette Street
(LOCATION)
Hartford, Connecticut 06106

November 1st,2002
(DATE)

PETITION FOR WRIT OF HABEAS CORPUS

1.  Details of conviction and sentence(s) now being served:

    1a.  Location of court  Superior Court New Haven Ct

    1b.  Date of arrest  Aug 16, 001

    1c.  Date of guilty plea (if any)  Dec 23, 001

    1d.  Date of sentencing  Feb 22, 002

    1e.  Name of sentencing Judge  L.R. Fasano

    1f.  Sentence(s)  5 years
                      (specify individual counts)

                      (concurrent or consecutive)
    1g.  Total effective sentence  5 years

    1h.  Total time in jail before sentencing  7 month  days. 8

    1i.  Name of lawyer  Auden Grogins,Es,
                        Grogins & Grogins-400 Stillson Road,Fairfield,Ct

    1j.  I pleaded guilty  Yes

         I did not plead guilty but was convicted by a jury _____ or

         a Judge _____

2.   Did you apply for sentence review? ____(Yes) ✓ (No)

     If yes, what result? _____

**FILED**

DEC 16 2002

**HARTFORD J.D.**

Petition for Writ of Habeas Corpus
Inmate No.  154736

Page 2 of 5

3.  Did you appeal your conviction?  _____(Yes)  _____(No)

   3a.  What issues did you appeal?  _____

       _____

   3b.  Did you appeal the issue you claim in this petition and if not, why?

   3c.  Result of your appeal  _____

   3d.  Who was your lawyer for the appeal?  _____

4.  Have you filed any other habeas corpus petitions?  _____(Yes)  _____(No).

   4a.  In what court?  _____

   4b.  State the docket or case numbers  _____

   4c.  Have you raised the issues in this petition in any of the old
       petitions?  _____(Yes)  _____(No).

   4d.  If not, why not?  _____

       _____

       _____

## N O T I C E

It is not enough to make general allegations using constitutional terms such as "due process" or "cruel and unusual punishment," in fact these terms need not be used at all. You must state your claim clearly, simply and directly in language you can understand. It is not necessary to cite cases. Failure to back up your claim with understandable factual allegations could mean that a judge will deny your petition before you ever get to court. In other words, what you stated here must show the judge that you really have a problem and are not just using the system for your own amusement, for a useless try to be released, or to harass the prison.

Also, since this petition must be sworn to under oath, any false statement in it could result in a conviction for false statement.  (C.G.S. 53a-157)

This form is intended to assist you in giving enough information to the court or your attorney. You may prepare your own petition if you wish, but you must be as detailed about your claim as is this form on your petition could be returned to you.

I have read the above notice _____
                         (Signature of Petitioner)

Petition for Writ of Habeas Corpus
Inmate No. _____154736_____                          Page 3 of 5

(You may answer only questions 5 or 6, not both. If you have a claim
relating to both, fill out another form.)

5. **This petition claims that my conviction was illegal because:**

   5. Guilty plea not voluntary _____

   5b. Plea bargain with prosecutor not followed _____

   5c. Sentencing illegal _____

   5d. Trial irregularity _____

   5e. My attorney did not represent me properly _____

   5f. Illegal arrest, search, or advice of rights _____

   5g. Mental state at plea or trial was _____

   5h. Other _____
                          (Specify)

   5i. State all facts and details to support your claim:

   _____

   _____

   _____

   _____
               (Use additional pages, if necessary)

6. I claim that my confinement at this institution is illegal because:

   6a. Incorrect jail time credit to me. Total credited is _____days;
       I think it should be _____total days.

   6b. Good time calculated incorrectly. Total days credited _____; I
       think the total should be _____days.

   6c. Prison hearing on parole ____, furlough ____, discipline ____,
       classification ____, other _____are being denied or are
                                  (specify)

       improper because: _____

   6d. The conditions here are inhumane or dangerous to me because:
       I am not getting the proper medical treatment due me as
       a sentenced Prisoner and WARD OF THE STATE OF CONNECTICUT
       _____

   6e. The medical XXX , drug ____, alcohol ____, dental ____, mental
       health _____ treatment program here is: Inadequate for my PRE-Exist-
       ing medical problems. and having tried to resolve these problems
       through the Grievance Method, has left little to be desired, and
       no effective relief (see incloed grievances  and further explan-
       ation)

Petition for Writ of Habeas Corpus
Inmate No. __154736__                                    Page 4 of 5

6f.  A guard _____, inmate _____, other person _____
                                              (specify)

     named _____ has done the following: _____
              (if known)

     _____

     _____

6g.  Other (be specific or use this space to complete above answers if
     needed) _____

     _____

     _____

6h.  State all facts and details regarding your claim. _____

     _____

     _____

     _____
            (Use additional Pages, if Necessary)

I am asking the court to:

     1.  Let me withdraw my guilty plea _____.

     2.  Order new trial or release me _____.

     3.  Correct the institutional condition complained of _____

     4.  Other (specify) Order the Medical Department at MacDougal
         to immediately comply with my medical needs
         as required by state law.

I do __xxxxxx__ (do __not__ _____) want an attorney to represent me in this claim.

__NOVEMBER  28, 2002__                    _Jean Henil_
      (Date Signed)                       (Signature of Petitioner)

State of Connecticut, County of __HARTFORD__ _____, being
duly sworn, states that the above information is true to the best of his
knowledge.

                    _Edward J. Arcouette_
                       (Notary Public)

                    _November 28 2002_
                       (Date Notarized)

                              Notary Public
                              Edward J. Arcouette
                              My Commission Expires March 31, 2004



# MacDougall -Walker Correctional Institution
# INMATE REQUEST FORM

**HOUSING/UNIT/CELL** J2-60

**INMATE NAME** DENNIS HENDERSON

**REQUEST** To Medical and Warden

**DATE** Aug 12, 002

**NUMBER** 154 736

This is my fourth time writing and Requesting a Egg crate Matches for my Bed and a truss for my Back. I am in a lot of pain from this Bed, and my Back hurt all the time? I have had two Back operation and have had a fusection done on my Back, I have to put clothes under my matches to ease the pain in my Back, so could kindly get these item "Please" I and can i get copy of all of my Reyst form for the last six month

Your truely

Dennis Henderson

#### ·(CONTINUE ON BACK PAGE IF NECESSARY)

**PREVIOUS ACTIONS TAKEN**_____

_____

#### (CONTINUE ON BACK PAGE IF NECESSARY)

**SUBMITTED TO**_____  **DATE RECEIVED**_____

**ACTED ON BY**_____

**ACTION TAKEN AND/OR RESPONSE**_____

_____

_____

_____

_____

_____

_____

_____

#### (CONTINUE ON BACK PAGE IF NECESSARY)

**DATE OF RESPONSE TO INMATE**_____

**SIGNATURE OF STAFF MEMBER**_____

**(REVISED 6/2001)**

# Inmate Grievance Form A, Level 1
## Connecticut Department of Correction

CN 9601A
7-1-98

| Inmate name Dennis Henderson | Inmate no. 154736 |
|---|---|

| Facility MacDougal | Housing unit J2-6a | Date 8-17-02 |
|---|---|---|

☐ Line grievance    ☐ Line emergency    ☑ Health grievance    ☐ Health emergency

1. Informal resolution. Attach a copy of Inmate Request Form (CN 9602) containing the appropriate staff member's response, or indicate why the form is not attached. No

written requests "EVER" returned

2. Nature of grievance. Indicate the events and reasons that led you to file this grievance. Specify dates, places, personnel involved, and how you were affected. (If you need more space, use an 8-1/2-by-11-inch sheet of paper and attach it to this form.) Grievance is based on the medical fact that I have surgery twice, and several vertebrae were fused, The mattresses in the cells are not medically fit. And I need an "Egg crate mattress". Further since I stand all pack bags at commissary every day I'm also in need of a truss.

3. Action requested. Describe what action you want taken to remedy the grievance. Immediate response by giving me an "Egg crate mattress and truss for my back pains.

Inmate signature Dennis Henderson

You may appeal this decision within 5 days. Use Inmate Grievance Form B.

### FOR OFFICIAL USE ONLY. LEVEL 1 REVIEW

| IGP no. M137-02-133 | T no. |
|---|---|

| Date received 9/3/02 | Disposition Denied | Date of disposition 9/4/02 |
|---|---|---|

Grievance issue Medical treatment

Reasons This is not a grievable issue. Furthermore, you were seen by the doctor on 8/30/02. He did not order an eggcrate.

Level-1 reviewer [signature] Lucas CHNS

# CORRECTIONAL MANAGED HEALTH CARE
## MACDOUGALL BUILDING
### MACDOUGALL-WALKER CORRECTIONAL INSTITUTION
### RICHARD G. FUREY, HEALTH SERVICES ADMINISTRATOR

TO:      Dennis Henderson #154736, J-77

FROM:    Rich Furey, HSA, M-WCI, MB

DATE:    November 15, 2002

Please be informed that after speaking with Dr. Silvis, egg crates are only used for people with diagnosed skin conditions.

C: file

# STATE OF CONNECTICUT
## SUPERIOR COURT
## JUDICIAL DISTRICT AT HARTFORD

## ORDER

_____  The application for Waiver of Entry Fee is denied.  You are responsible to pay the Marshal's fee, the Entry Fee of $185.00 and any other costs associated with prosecuting this action.

X  The application for Waiver of Entry Fee is granted.

_____  The Court has waived a portion of the Entry Fee.  The balance of $_____ is necessary for the writ to be processed.  If you are paying by check or money order, please make it payable to the "Clerk of the Superior Court".

DATE: _12~19~02_     _____
                                    JUDGE

RE: _Henderson_  VS.  _Warden_

# EXHIBIT B

DOCKET NO. CV020822046        : SUPERIOR COURT

DENNIS HENDERSON             : JUDICIAL DISTRICT

         V.                : HARTFORD, CONNECTICUT

WARDEN                     : APRIL 16, 2003


BEFORE:


    THE HONORABLE RICHARD RITTENBAND, JUDGE




A P P E A R A N C E S :



    NEIL PARILLE, ESQUIRE, AAG
    OFFICE OF ATTORNEY GENERAL
    110 SHERMAN STREET
    HARTFORD, CONNECTICUT


    DENNIS HENDERSON, PRO SE




        ROBERTA G. CARLON
      COURT MONITOR/REPORTER

1          THE COURT:  Good morning, ladies and gentlemen.

2    Moving quickly along.  Dennis Henderson.  Will

3    counsel please identify themselves for the record.

4          MR. PARILLE:  Neil Parille, Office of the

5    Attorney General on behalf of the respondent.

6          THE COURT:  Okay.  And this is Dennis Henderson

7    versus the Warden, CV020822046.  I've looked this

8    over and I believe he's complaining about a bad

9    back.  "This is my fourth time writing and

10   requesting an egg-crate mattress for my bed and a …"

11         MR. HENDERSON:  A truss for my back.

12         THE COURT:  "And a truss for my back.  I am in

13   a lot of pain from this bed and my back hurt all the

14   time.  I've had two back operations and have had a

15   fusion done on my back.  I have to put clothes under

16   my mattress to ease the pain in my back so could I

17   kindly get these items please and can get copy of

18   all my requests for the last six months."

19         Could we have Dr. Blanchette on the stand.

20   Apparently there was a grievance which this is not a

21   grievable issue.  Furthermore, you were seen by the

22   doctor on 8/22/02.  He did not order an egg crate.

23   Are you familiar with this, Dr. Blanchette?

24         DR. BLANCHETTE:  Yes, Your Honor.

25         THE COURT:  Would you elucidate for us, please.

26         DR. BLANCHETTE:  Certainly.  Well, an egg-crate

27   mattress is certainly something I'm well familiar

1    with.  What that is, Your Honor, is a foam padding

2    in the shape of an egg crate where there are

3    recesses and prominences.  And what it's designed to

4    do and where I use it really exclusively is for

5    patients who have mobility issues in bed.  These are

6    bed-ridden patients where they are prone to

7    decubitus ulcers.

8             THE COURT:  That are what?

9             DR. BLANCHETTE:  Bed-ridden patients that are

10    prone to decubitus ulcers.  In other words, ulcers

11    of the skin because they're lying in one spot too

12    often.  These are the types of patients, for

13    example, who have had strokes where I order the

14    nursing staff to turn them every couple of hours in

15    order to avoid pressure points on the skin for any

16    length of time to avoid decubitus ulcers.  As Your

17    Honor probably knows, that can be a real problem for

18    elderly patients that don't have the ability to move

19    themselves, etc., and stroke victims and other

20    people in the same category.

21             It would never even occur to me to order such a

22    device for someone with low back pain.  In fact,

23    that's not what would be indicated.  Usually if one

24    looks at back problems, and what sort of -- what

25    you'd want, you'd want something firm.  You'd want

26    something that offers some support.  The mattresses

27    in the facilities are thin.  They have a metal

1    backing underneath and that's certainly sufficient

2    for someone with low back pain.  I would have

3    absolutely no reason to order an egg-crate mattress.

4    And as I mentioned it wouldn't even occur to me or

5    to any physician that I know of to order such a

6    device for that complaint.

7        THE COURT:  Let me just take a look here.  Even

8    for someone who's had two back operations and have

9    had a fusion done on his back?

10       DR. BLANCHETTE:  Regardless of the history,

11   Your Honor, it's just not a device that's utilized

12   for that purpose.  I'm not saying that an egg-crate

13   mattress wouldn't be a comfortable item.  What I'm

14   saying is that:  Is it medically necessary that this

15   man for his low back pain problem -- does he require

16   an egg-crate mattress?  And clearly the answer is

17   no.  He's seen Dr. Silvas who's given him the same

18   answer.  It's been reviewed.  It's been reviewed by

19   URC.  They also feel it's no -- this is one instance

20   where all the physicians are in unanimous agreement.

21       THE COURT:  Well, what can he do for his low

22   back pain?

23       DR. BLANCHETTE:  Exactly what I would do for

24   anyone.  And that is he would have non-steroidal

25   anti-inflammatory agents when indicated, not for a

26   long a period of time because you don't like to get

27   into the complications, back exercises which he's

1    been given, muscle relaxants when that was indicated

2    with exacerbations, etc., the usual conservative

3    management.

4         We know that he does have some arthritis in his

5    back and he does on x-ray -- back in 1981 he had the

6    surgery by the way, Your Honor, and he had a what

7    they call a hemilaminectomy which is a certain type

8    of surgery to correct a disc problem on one side and

9    clearly that's been done.  But there aren't any

10   special recommendations that are made for someone

11   who's had that kind of surgery as far as bending

12   over and above what you'd do for anybody with low

13   back pain.

14        THE COURT:  Do you want to be heard, sir?

15        MR. HENDERSON:  Yes, I do.

16        THE COURT:  Go ahead.

17        MR. HENDERSON:  In 2002, February 22nd, I was

18   sentenced and became a ward of the state.  And

19   previous to that I came into the system with a back

20   problem, an existing back problem, which I've had

21   disc removed and a fusion done.  The fusion was done

22   because I broke a vertebrae down my spine.  At that

23   time I was considered disabled by the state and was

24   collecting disability.  And he's a doctor, he should

25   know, that after having a fusion done after a long

26   length of time like I had done, the disc above and

27   below where the fusion is done start to wear.  I'm

5

1   experiencing pain from those discs, getting shooting

2   pains down my leg when I lay in the bed, on

3   something hard, and that's where my problem is

4   coming in at.

5       As far as the truss is concerned, my job has

6   accommodated me at McDougall with giving me a job

7   riding bags* so I don't have to do any lifting.  So

8   that truss is out.  I'm just looking for something

9   to ease my pain.  They are giving me Motrin to be

10  refilled twice a month.  That's sixty Motrin a

11  month.  By taking the Motrin it could damage my

12  liver and it could damage my stomach lining.  Also

13  Dr. Silvas and anyone else will tell me, once you

14  had -- Dr. Silvas is my orthopedic surgeon --, you

15  had a fusion done, there's not much back exercise

16  you can do because that section in your back does

17  not move.  It doesn't give.  It's like -- it's just

18  solid.  The only thing that moves is the disc above

19  and below and by moving you wear it even more by

20  doing back exercise.

21      DR. BLANCHETTE:  Well, clearly, back exercises

22  would be something you do regardless or whether you

23  had a fusion or not.  If the plaintiff is stating

24  that he has less mobility because of the fusion,

25  well, obviously that's true because a fusion is

26  designed to fuse the bones so that further disc

27  herniation cannot occur.  He cannot have, for

1    example, unless the fusion should break, he cannot
2    have a herniated disc in those areas because it's
3    fused solid.  And while it's true that his mobility
4    would be decreased, back exercises which primarily
5    look at the peri-spinal muscles because that's the
6    source of much pain with regard to low back pain for
7    the average patient are still something that can be
8    utilized and I would encourage them.  There's no
9    contraindication to doing that just because he's had
10   a disc fusion.  And again, I'd just reiterate the
11   request for an egg-crate mattress is, I find myself,
12   to be a very odd request for someone with back pain.
13   That's not considered to anywhere in anyone's
14   armamentarium for therapeutic intervention for this
15   sort of thing.

16        THE COURT:  Well, he also claims, as I
17   understood him, that two discs as a result of the
18   back fusion are worn out or are wearing out.  What
19   do you do about that?

20        DR. BLANCHETTE:  Well, Your Honor, on x-ray
21   what he has are some mild degenerative disease, very
22   mild.  He doesn't have in my estimation any more
23   deterioration or wearing down, so to speak, than
24   anybody else would.  I myself just because of my age
25   probably have more degeneration than this gentleman
26   has.  So the fact that he's saying that he has some
27   ongoing degenerative joint disease, well, sure, but

1    so don't we all.

2         THE COURT:  That's the same thing as arthritis.

3         MR. HENDERSON:  Well, Dr. Silvas had done put

4    me on no exercising at all.  I'm not supposed to

5    exercise my back, not suppose to go to the gym

6    because they're afraid I might damage my back any

7    more.  That's what they told me.  They're the ones

8    that told me not to exercise my back.

9         DR. BLANCHETTE:  If I may then, certainly I

10   would never advise that a gentleman like this do

11   heavy lifting, for example, or be involved in sports

12   such as prison basketball which is a very vigorous

13   sport that where one can get jolting damages and is

14   a leading cause of fractures in my practice, I can

15   assure you.  But that kind of exercise is not the

16   same as stretching.  Stretching exercises which is

17   what back exercises are are certainly something that

18   would potentially be helpful in a case like this and

19   would not be contraindicated.  So the exercises that

20   the gentleman is referring to are the very vigorous

21   type of exercise, playing prison basketball,

22   softball, etc., where he could break his fusion

23   would be things that any physician, including

24   myself, would say you shouldn't do.  But that's not

25   the same thing as saying you can't do stretching

26   exercises.  Nobody would say that in my estimation.

27   There's no physician that would ever say that you

1    can't or shouldn't do those.

2         THE COURT:  Can you do stretching exercises?

3         MR. HENDERSON:  I stretch my back all the time.

4    But I also have nerve damage also from where the

5    disc was removed.  My left leg is totally numb on

6    the outside.  I got three toes that have no feeling

7    in them and that's from having the damage from the

8    disc and I'm not trying to do any more damage to the

9    discs that are already damaged.  And like I just

10   said, when I'm laying in bed at night, by laying on

11   a hard surface is causing, I guess, the pinching of

12   the nerve because I'm getting shooting pains down my

13   back, down the back of my legs to my feet, and

14   that's neurological.  That's a neurological problem.

15   So laying on something hard is not going to

16   alleviate that problem.

17        DR. BLANCHETTE:  With all due respect to the

18   plaintiff, Your Honor, the fact that his mattress is

19   soft or hard is not something that is not going to

20   effect his neurologic situation at the present time.

21   The major issue with his neurologic status right

22   now, frankly, is his diabetes which he has not been

23   the best patient in controlling.  As you know

24   diabetes does cause peripheral neuropathy and part

25   of the problem with this particular patient is that

26   he's been poorly controlled in the past and control

27   has been a difficult issue and as a result he does

1    have some peripheral neuropathy as we call it but

2    that has nothing --

3         THE COURT:  Where is the neuropathy?

4         DR. BLANCHETTE:  Diabetic neuropathy

5    traditionally occurs most prominently in the distal

6    extremities.  So that would be toes, feet, things

7    like that.

8         THE COURT:  I have neuropathy in my feet where

9    they stiffen up at night.

10        DR. BLANCHETTE:  Well, that is not related to

11   his back.

12        THE COURT:  The back, I know.

13        DR. BLANCHETTE:  And they are quite a different

14   pathology involved.  Again, I can only say, Your

15   Honor, I think that most physicians, including

16   myself, would be at a loss to explain why an egg-

17   crate mattress was necessary for this man.  If he

18   were outside the prison system and you want to get

19   an egg-crate mattress, I'd say, fine, get one.  But

20   I cannot give him a medical pass for an egg-crate

21   mattress that says this is medically necessary for

22   you.  In good conscience, I just can't do that.

23        THE COURT:  Well, do you think the mattress he

24   has is hard enough?

25        DR. BLANCHETTE:  I know the way the mattresses

26   are made, the mattress thickness, which they're

27   really not very thick, they're against a metal

1    floor, if you will, and that would give plenty of

2    support.  We don't have any problems with that.

3    THE COURT:  What about the problem of sixty

4    Motrin a month causing potential liver damage?

5    DR. BLANCHETTE:  Well, I'd be more worried

6    about kidney damage, frankly, than liver damage for

7    a non-steroidal.  But I'd also be worried about

8    gastric ulcerations and what I would tell a patient

9    like this, and what I do in my practice, is don't

10   take that much and if you do -- I myself would stop

11   his Motrin periodically until enough time passed and

12   then would let him reinstitute if he wished.  I'd

13   substitute Tylenol or something like this but I

14   would not want -- I really don't like to have my

15   patients on uninterrupted non-steroidal therapy

16   because it leads to certain complications in a

17   certain number of patients and --

18   THE COURT:  Well, shouldn't he be checked for

19   kidney damage?

20   DR. BLANCHETTE:  Sure, Your Honor.  I think

21   though that I believe, although I don't have that

22   part of his record with me, I have his x-rays here,

23   I don't believe that there's any indication that he

24   has any problems.  But I can certainly do a blood

25   test which would check his renal function and his

26   liver function.  There's no indication from his past

27   record, I can assure you and the plaintiff, that he

1   has any difficulty in either realm.  But the problem

2   that we're going to run into, of course, is because

3   he's diabetic he's likely to run into problems with

4   renal function which may be quite -- the etiology of

5   which would be very different from non-steroidals.

6   But certainly I can speak with Dr. Silvas and I

7   think limiting his non-steroidal therapy would

8   probably be a good idea.

9           THE COURT:  I don't know what I can do.  He

10  recommends against the egg shell.

11          MR. HENDERSON:  What about a double mattress?

12          THE COURT:  Pardon me?

13          MR. HENDERSON:  A double mattress.

14          THE COURT:  A what mattress?

15          MR. HENDERSON:  A double mattress, double

16  mattresses.

17          THE COURT:  Duller?

18          MR. HENDERSON:  Double, double mattresses.

19          THE COURT:  Oh, double mattress.

20          MR. HENDERSON:  What about that?

21          DR. BLANCHETTE:  Same situation, Your Honor.

22          THE COURT:  I don't know what I can do for you,

23  Mr. Henderson.

24          MR. HENDERSON:  And as far as my -- I had a

25  problem with my prostate and my kidneys last year.

26          MR. PARILLE:  Your Honor, I'm going to object.

27  The petition says it's a problem with his back.

1          THE COURT:  Well, let's just hear what he has

2     to say.

3          MR. HENDERSON:  I am taking medication for my

4     prostate and I did have a kidney problem last year

5     from I guess from medication or whatever.  I don't

6     know.  But like I said the only thing I'm trying to

7     get now is just something to alleviate the pain that

8     I'm in at nighttime.  That's the only reason why I

9     applied for the egg-crate mattress because they did

10    award them to two other patients in my pod that had

11    had back surgery.  So I don't know what the

12    difference is with me.

13         DR. BLANCHETTE:  I can't discuss other

14    patients, Your Honor.  I don't know the cases and

15    there may be certain details that are pertinent that

16    don't apply to this case.

17         THE COURT:  Well, you can check on his

18    medication?

19         DR. BLANCHETTE:  The medications I can check

20    on, Your Honor.  And as far as checking on his liver

21    and renal function I'm more than happy to do that.

22    That should be done periodically anyway.  If it

23    hasn't been done recently, I'll certainly do that

24    because of his diabetes.

25         THE COURT:  That's all I can do for you, sir.

26         MR. HENDERSON:  No problem.  Thank you, Your

27    Honor.

1      THE COURT:  I'm going to dismiss the case

2   because if you have a problem again, you know, just

3   file another habeas.

4      MR. HENDERSON:  Oh, I intend to.

5      THE COURT:  Good luck.

6      (End of proceeding)

7

8

9

10

## CERTIFICATION

I hereby certify that the foregoing is a true and accurate transcript to the best of my ability of the aforementioned matter heard before the Honorable Richard Rittenband, at the Hartford Superior Court, Hartford, Connecticut, on 16th day of April, 2003.


Dated this 11th day of March, 2004, at Hartford, Connecticut.




ROBERTA G. CARLON
COURT MONITOR/REPORTER

# EXHIBIT C

Case name   *HENDERSON v. WARDEN*

Docket No.   *CV02 082 20 46*

## **ORDER**

*DR. WILL CHECK MEDICATION, KIDNEY AND RENAL FUNCTION. PETITIONER'S MEDICAL HABEAS PETITION IS DISMISSED.*

( Rittenband, JTR)   JUDGE

Peter Lewandowski   CLERK
                    TAC

DATE   4-16-03